**2021 UT App 126**

## THE UTAH COURT OF APPEALS

SYSCO CORPORATION AND AMERICAN ZURICH INSURANCE,
Petitioners,
*v.*
LABOR COMMISSION AND PAUL ROBERTS,
Respondents.

Opinion
No. 20200058-CA
Filed November 18, 2021

Original Proceeding in this Court

Brad J. Miller, Attorney for Petitioners

Brian D. Kelm, Attorney for Respondent
Paul Roberts

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     While working as a salesperson for Sysco Corporation, Paul Roberts was injured in four work-related automobile accidents over several years. Roberts recovered from the first three accidents but was permanently injured by the last accident. Roberts sought and was awarded permanent partial benefits and, later, permanent total disability benefits for his injuries. Sysco and its insurer, American Zurich Insurance, (collectively, Sysco) seek judicial review of the Labor Commission's (the Commission) determination that the last accident permanently aggravated Roberts's cervical-spine condition and that he was entitled to permanent total disability benefits. We decline to disturb the Commission's decision.

BACKGROUND

¶2     In the course of his employment with Sysco, Roberts suffered injuries in four car accidents between March 2005 and January 2014. Roberts eventually returned to work following each of the first three accidents. But after the final accident in 2014, Roberts could not return to work due to neck and back pain from his injuries and was awarded permanent partial disability benefits, based on the conclusions of a medical panel. Roberts attempted to return to full-time work briefly in March 2015, but chronic neck, cervical, spine, and lower back pain, along with restrictions on his driving and his ability to sit for long periods of time, rendered him unable to do so. Roberts's condition worsened, and he eventually filed a claim for permanent total disability benefits by filing four applications for hearing—one for each accident—asserting that together the accidents had rendered him permanently and totally disabled.

¶3     Following a hearing, the administrative law judge (ALJ), Judge Trayner, referred Roberts's claim to the same medical panel that had evaluated him two years earlier regarding his permanent partial disability claim. This time, the medical panel did not meet with Roberts or examine him but instead, without approval from Judge Trayner, referred him to a non-physician for a functional capacity evaluation (FCE). Relying on that FCE, the panel opined that Roberts could function at a level that would preclude an award of permanent total disability benefits.

¶4     In response to Roberts's concerns about the panel's reliance on the FCE, Judge Trayner asked the medical panel for clarification of its methods. Upon receiving the clarification, Roberts objected to the medical panel report on the ground that the panel had not examined him and had inappropriately relied on the conclusions of the FCE—conducted by a non-physician and "notorious insurance defense designee[]"—rather than conducting its own evaluation. Sysco, on the other hand, asked

Judge Trayner to rely on the panel report to conclude that Roberts was not permanently disabled.

¶5    Before Sysco's time to respond to Roberts's objection had passed, Judge Trayner sent the parties a letter explaining that she intended to "reject the current medical panel report and reassign the case to a new chair for evaluation." She expressed concern with the adequacy of the techniques used in the FCE and stated that the Commission's general practice was not to include clinicians on medical panels if they "perform independent medical examinations on behalf of [either] respondents or petitioners to avoid any appearance of bias." Judge Trayner ultimately rejected the medical panel report because the panel had adopted the FCE "without explanation or consideration of the medical records in the evidentiary record" and without providing "an explanation of the reasoning behind the panel's conclusions." She explained, "[T]he panel's adoption of [the FCE] without explanation does not assist the Court in making medical findings in this matter. There was no collegial review of the medical issues. The current medical report contains glaring deficiencies and contradictions."

¶6    Judge Trayner then appointed a new medical panel, which ultimately concluded that Roberts had significant functional limitations affecting his ability to work. Sysco objected to Judge Trayner's rejection of the original medical panel's report, her appointment of the new medical panel, and the new panel's conclusions. At that time, Sysco also attempted to submit a surveillance video that purported to depict Roberts "using a shovel to dig up grass and work on his sprinkler system," bending and kneeling, and driving a vehicle without any apparent pain or difficulty.

¶7    Roberts moved to strike the surveillance video, asserting that the new video evidence was untimely, coming more than a year after the evidentiary hearing on his claim, and that Sysco

had provided no foundation to support its claim that the video even depicted Roberts.[1]

¶8 A different ALJ, Judge Newman, considered and rejected Sysco's objection to the referral to a new medical panel and its request that the original medical panel's report be admitted into evidence, and he granted Roberts's motion to strike the surveillance evidence. Specifically, Judge Newman agreed with Judge Trayner that the original medical panel's report should be rejected because it "was grossly deficient in its analysis or explanation of its conclusions as to why it adopted [the] FCE findings." Judge Newman also declined to admit the surveillance video into evidence because Sysco had "not obtained leave of the [ALJ] to accept additional evidence" after the record was closed. *See* Utah Admin. Code R602-2-1(I)(8) ("Subject to the continuing jurisdiction of the Labor Commission, the evidentiary record shall be deemed closed at the conclusion of the hearing, and no additional evidence will be accepted without leave of the administrative law judge."). Judge Newman adopted the second medical panel's findings and ultimately awarded Roberts permanent total disability benefits.

¶9 Sysco petitioned the Commission for review of the ALJs' decisions, asserting that Judge Trayner had denied the company due process when she issued an order rejecting the original medical panel's report only seven days after Roberts objected, since Sysco should have had ten days to respond to the objection. Sysco also asserted that Judge Trayner erred by rejecting the first panel report. Finally, Sysco argued that Judge Newman should have considered the surveillance video.

---

1. Roberts maintains that the video likely depicted his brother, who had been doing work on his yard for him.

¶10 The Commission rejected Sysco's argument that it had been denied due process, pointing out that the ALJs had "considered Sysco's arguments on the issue and the Commission is doing the same on review." The Commission also upheld Judge Trayner's decision to reject the original medical panel's report, explaining,

> The first panel's report in this matter improperly referred Mr. Roberts . . . for [an FCE] without Judge Trayner's prior authorization and then merely deferred to [the FCE] findings without any meaningful analysis of the medical evidence in the record. As Judge Trayner determined, the first panel's actions represent a dereliction of its responsibility in this matter.

Finally, the Commission agreed with Judge Newman that the submission of the surveillance video was untimely. Accordingly, the Commission upheld the award of permanent total disability benefits to Roberts.

¶11 Sysco now seeks judicial review of the Commission's decision upholding the award of permanent total disability benefits and precluding consideration of the additional surveillance video evidence.

ISSUES AND STANDARDS OF REVIEW

¶12 First, Sysco asserts that it was denied due process when Judge Trayner ruled on Roberts's objection to the original medical panel's report before allowing Sysco its full time to respond. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Fastenal v. Labor Comm'n*, 2020 UT App 53, ¶ 12, 463 P.3d 90 (quotation simplified).

¶13    Next, Sysco asserts that the Commission erred in upholding Judge Trayner's decision to reject the original medical panel's report and appoint a new medical panel. "We generally review the Commission's decisions regarding appointment of medical panels for abuse of discretion . . . ." *Graphic Packaging Int'l Inc. v. Labor Comm'n*, 2021 UT App 82, ¶ 21, 495 P.3d 228. "[A]s the ultimate fact-finder, . . . the administrative law judge retains the discretion to reject the medical panel's recommendation." *Ramos v. Cobblestone Centre*, 2020 UT 55, ¶ 31, 472 P.3d 910. When it does so, the ALJ has the discretion to "make contrary findings" or "appoint a second medical panel." *See Graphic Packaging*, 2021 UT App 82, ¶ 26.

¶14    Finally, Sysco challenges the Commission's decision to exclude the surveillance video. "The standard of review for an agency's application and interpretation of its own rules is abuse of discretion." *Wallace v. Labor Comm'n*, 2019 UT App 121, ¶ 7, 449 P.3d 218.


ANALYSIS

I. Due Process

¶15    Sysco first asserts that it was denied due process with respect to the exclusion of the original medical panel's report because Judge Trayner excluded the report before affording Sysco its full time to respond to Roberts's objection under the Utah Administrative Code.

¶16    Rule R602-2-2 of the Utah Administrative Code allows a party ten days to respond to another party's objection to a medical panel report. Utah Admin. Code R602-2-2(B)(1). Here, Judge Trayner rejected the original medical panel's report only seven days after Roberts filed his objection to the report and before receiving a response from Sysco. However, as the Commission pointed out, Sysco did ultimately file a response to

Roberts's objection, which Judge Newman considered on the merits. And the Commission also considered the merits of Sysco's argument that Judge Trayner should not have rejected the original medical panel's report.

¶17 On judicial review, Sysco does not address the Commission's determination that the company received due process or explain why Judge Newman's and the Commission's ultimate consideration of its arguments on the merits did not afford it adequate due process. *See Color Country Mgmt. v. Labor Comm'n*, 2001 UT App 370, ¶ 29, 38 P.3d 969 (explaining that even if a party was initially denied due process by an ALJ's failure to consider evidence, subsequent analysis of the evidence by a second ALJ and the Commission remedied the situation). Thus, we decline to disturb the Commission's determination that Sysco received due process.

## II. Rejection of the Medical Panel Report

¶18 Sysco next argues that the Commission erred in upholding Judge Trayner's decision to reject the original medical panel's report. However, Sysco never directly engages with the Commission's reasoning for rejecting the report. The Commission explained,

> The first panel's report in this matter improperly referred Mr. Roberts . . . for [an FCE] without Judge Trayner's prior authorization and then merely deferred to [the FCE] findings without any meaningful analysis of the medical evidence in the record. As Judge Trayner determined, the first panel's actions represent a dereliction of its responsibility in this matter.

¶19 Instead of addressing this reasoning directly, Sysco raises numerous arguments for why the original medical panel's report should have been accepted, without addressing Judge Trayner's

ultimate ground for rejecting the medical panel's report. First, Sysco argues that there was no evidence of actual bias on the part of the panel members. But although Judge Trayner did express concern that there was an "appearance of bias" with respect to the non-physician who conducted the FCE because he also conducted independent medical examinations for insurance companies, she also justified the rejection of the medical panel on the independent ground that the medical panel adopted the FCE "without explanation or consideration of the medical records in the evidentiary record." And this second ground is the one that Judge Newman and the Commission focused on and agreed with in rejecting Sysco's objections to Judge Trayner's decision.

¶20    Sysco also asserts that Judge Trayner had praised and relied on the same panel's report when she examined Roberts's permanent partial disability claim two years earlier, that the panel members had reviewed Roberts's medical records despite not personally examining him again, and that Judge Trayner's concerns with the FCE were speculative. But even if we accept all these points, none of them go to the matter the ALJs and the Commission were concerned with: that the medical panel "simply repeated the results of a functional capacity evaluation that it was not authorized to order without any meaningful analysis from the panel doctors assigned for that purpose." The fact that the same medical panel produced a quality report two years earlier says nothing about the quality of its subsequent report. Likewise, the fact that the panel doctors had Roberts's records in front of them does not change the fact that their report ultimately relied on the FCE rather than their own conclusions. And even assuming there were no flaws whatsoever in the FCE, it was still problematic for the medical panel to rely on it without conducting its own analysis.

¶21    Ultimately, none of these arguments does anything to contest the ALJs' and the Commission's conclusions that the

medical panel delegated its duties to a non-physician who was not appointed to the medical panel and that the medical panel essentially adopted the results of the FCE without conducting any independent analysis.

¶22    The decision whether to reject the medical panel report is discretionary. *Bade-Brown v. Labor Comm'n*, 2016 UT App 65, ¶ 8, 372 P.3d 44. Here, the Commission articulated a reasonable basis for rejecting the medical panel's report, and Sysco has not carried its burden of demonstrating an abuse of discretion. *See Right Way Trucking, LLC v. Labor Comm'n*, 2015 UT App 210, ¶ 15, 357 P.3d 1024 (rejecting an employer's argument where it "failed to engage with the ALJ's reasoning"). Thus, we decline to disturb the Commission's decision affirming the rejection of the first medical panel report.

### III. Appointment of a New Medical Panel

¶23    Sysco also challenges Judge Trayner's appointment of a new medical panel. However, its argument hinges entirely on its assertions that it was denied due process when Judge Trayner rejected the first report and that Judge Trayner exceeded her discretion in rejecting the first report. Because we have rejected both of these arguments, we are left with no basis for setting aside Judge Trayner's decision to appoint a new medical panel, which is generally a matter within the ALJ's discretion. *See Graphic Packaging Int'l Inc. v. Labor Comm'n*, 2021 UT App 82, ¶ 26, 495 P.3d 228 (holding that an ALJ may, "within its discretion in appropriate cases, . . . appoint a second medical panel" and that such appropriate cases include those where there are issues with the first medical panel's report, such as its failure to adequately fulfill the ALJ's directives).

### IV. New Evidence

¶24    Finally, Sysco argues that the Commission should have considered the surveillance video evidence allegedly showing

Roberts working in his yard. However, Sysco once again fails to engage with the Commission's analysis of this issue.

¶25 The Utah Administrative Code dictates that additional evidence will not be accepted after the evidentiary hearing without leave of the ALJ. Utah Admin. Code R602-2-1(I)(8). Accordingly, Judge Newman rejected the surveillance video evidence on the ground that Sysco had not obtained leave to reopen the record and submit the new evidence. The Commission agreed with Judge Newman's reasoning and affirmed his decision.

¶26 On review, Sysco has made no attempt to explain why it should not have been required to comply with the Utah Administrative Code and instead asserts merely that there was "good cause" to submit the surveillance video. Sysco does not assert that the Commission abused its discretion in enforcing the Administrative Code's requirements, and we therefore decline to disturb the Commission's decision to exclude the surveillance video.

CONCLUSION

¶27 Sysco has not demonstrated that it was denied the opportunity to argue against the rejection of the original medical panel's report and therefore has not established that it was denied due process. Further, because Sysco has not engaged with the Commission's reasoning for rejecting the original medical panel's report, it has not met its burden to show that the Commission exceeded its discretion. Because we reject Sysco's arguments on both of these issues, we also reject its assertion that the Commission erred in appointing a second medical panel. Finally, Sysco does not adequately challenge the Commission's decision to exclude the surveillance video evidence. Accordingly, we decline to disturb the Commission's decision.

_____